ANÍBAL E. BONETA COLÓN, NÉSTOR A. BONETA COLÓN, peticionarios.

No.____.—*Sometidos:* Noviembre 5, 1928. *Resueltos:* Febrero 14, 1929.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En estos dos expedientes, la materia de hechos es como sigue:

Aníbal E. Boneta y Colón, acudió ante este tribunal, en 1921, alegando ser graduado de la Universidad Nacional de

Washington, D. C., con asistencia a las clases por tres años y solicitando sufrir examen; no dice en qué es graduado, ni qué examen solicita. Presentó su documentación, título, etc., y fué admitido para examen de abogacía, que sufrió el 30 de marzo de 1921, siendo suspendido. De nuevo solicitó y obtuvo examen en noviembre del mismo año, y fué suspendido, en 23 del mismo mes. Por tercera vez obtuvo examen en marzo de 1922, y fué suspendido en 24 del mismo mes. En 1925 volvió a obtener examen, y fué suspendido en 25 de noviembre del mismo año. Obtuvo otra vez examen en 1926, y fué suspendido en 26 de marzo del mismo año. Y ahora, de acuerdo con una Ley No. 78, de 1928, pide se le admita ejercer la profesión de abogado sin examen, por ser graduado de universidad acreditada de Estados Unidos, persona de buena conducta moral, que acredita con declaraciones juradas, y por haber desempeñado satisfactoriamente el cargo de Juez Municipal en Puerto Rico por más de cuatro años. Entre los documentos que presenta se halla una declaración conjunta de los abogados Sres. Lorenzo Coballes y Luis Mercader, quienes juran conocer al peticionario, hace ocho años, y ser el mismo persona de intachable conducta, y reputación, y digno de ser admitido al ejercicio de la profesión de abogado; y una certificación firmada por el Honorable Attorney General de Puerto Rico, de la que aparece que Aníbal E. Boneta ha venido prestando servicios satisfactorios como Juez de la Corte Municipal de Camuy desde 11 de enero de 1924 hasta la fecha en que se certifica, que es 29 de mayo de 1928.

Néstor A. Boneta Colón, en 1921 acudió a este tribunal, pidiendo se le admitiera a examen para ejercer la abogacía. Presentó su documentación, título de la Universidad Nacional de Washington, asistencia a clases, conducta, etc., y fué admitido a examen; en éste, que se efectuó el 29 de marzo de 1921, fué suspendido el aspirante. Pidió éste de nuevo el examen, que tuvo lugar el 23 de noviembre de 1921, y de nuevo fué suspendido. Por virtud de nueva petición, fué admitido

a examen, que sufrió en 24 de marzo de 1922, y fué suspendido. Y ahora, de acuerdo con la antes citada Ley No. 78, de 1928, pide que se le admita al ejercicio de la profesión de abogado, sin examen; y acompaña a la petición una declaración jurada, conjunta, de los abogados Sres. Herminio Miranda y Luis Mercader, que acredita la buena conducta moral del peticionario, su reputación buena, y que los declarantes le creen digno de ser admitido al ejercicio de la abogacía; y una declaración jurada del abogado Lorenzo Coballes Gandía, que manifiesta que el peticionario desde enero de 1921 ha venido asistiendo con regularidad a la oficina de abogado y notario del declarante, y practicando con éxito las diversas ramas de la abogacía, auxiliando al declarante en sus trabajos profesionales.

Como cuestiones de ley, encontramos las que siguen:

(a) La admisión de abogados al ejercicio de la profesión en Puerto Rico, está regida, en primer lugar por Ley de 8 de marzo de 1906, a la que se incorporaron varias enmiendas, que aparecen en la Compilación de 1911 (Secciones 151 y siguientes hasta la 180) en la que se preceptuó que las personas de buena conducta moral, mayores de 21 años, ciudadanos de Estados Unidos o de Puerto Rico, que tuvieran diploma de abogado, expedido por universidad acreditada, que no sea por correspondencia, podrían ser admitidos, presentando su diploma y certificado de asistencia personal a las clases por no menos de dos años, sufriendo examen acerca de las materias que la ley señala, y ante la Corte Suprema de Puerto Rico, o el tribunal que ella nombrara, y obteniendo el informe favorable de la comisión de reputación. La sección 6 de la ley confiere a la Corte Suprema de Puerto Rico la facultad de redactar las reglas necesarias para cumplimiento de la ley. Las leyes anteriores quedaron expresamente derogadas.

La ley de 11 de marzo de 1909, creó la comisión de reputación, cuyos miembros son nombrados por la Corte Suprema de Puerto Rico, y a la que deben pasar por mandato de la ley, las solicitudes de admisión de aspirantes al ejercicio de

la abogacía, pendientes ante la Corte Suprema, la que no podrá expedir licencia alguna para ejercer la profesión sin el previo y favorable informe de la comisión. En esa misma ley se declaran y fijan las facultades de la Corte Suprema de Puerto Rico para destituir y suspender los abogados en el ejercicio de la profesión, en casos determinados, y mediante cierto procedimiento.

La ley No. 38, de 13 de abril de 1916, confirmó la exigencia de la presentación de diplomas, examen ante el Tribunal Supremo, y el informe de la comisión de reputación, y la enumeración de materias para el examen. Pero en su sección 4, estableció que las personas de buena conducta moral, admitidas a ejercer como abogados en las Cortes Supremas de Estado o Territorio de los Estados Unidos, Distrito de Columbia, o Corte de Distrito de los Estados Unidos para Puerto Rico, que hubiera ejercido activamente por lo menos tres años, uno de ellos en la Corte de Distrito de los Estados Unidos para Puerto Rico, puede ser admitida, sin examen, previa solicitud y justificación de llenar aquellos requisitos. En la sección 5 de esta Ley se dice ''Siempre que el Tribunal Supremo, en cualquiera de los casos especificados anteriormente resuelva admitir a una persona al ejercicio de la profesión de abogado, hará que dicha persona preste, ante el mismo, juramento . . . . .'' La sección 6 confirma la facultad de este tribunal para dictar reglas para el cumplimiento de la ley. Y en la sección 10 se expresa que esta Ley no se interpretará en el sentido de prohibir a la Corte Suprema, o a cualquier juez de la misma, que por cortesía autorice a cualquier abogado admitido en Estado o Territorio de los Estados Unidos o Distrito de Columbia, que visite esta Isla, para comparecer ante las cortes de la misma en casos especiales.

La Ley No. 45, de 12 de abril de 1917, fué especial, para la admisión de aquellos que se habían examinado y obtenido un promedio del 60 por ciento en el último curso, y hubieran tenido práctica continua por diez años en oficinas en las que

el trabajo requiriese conocimiento de derecho, a cuyas personas se permitió el examen, sin necesidad de presentar diploma.

La sección 4 de la Ley No. 38 de 13 de abril de 1916, fué enmendada por la Ley No. 17 de 1925, en el sentido de permitir que aquellos que se hubieran graduado por lo menos con diez años de anterioridad a la aprobación de esta Ley No. 17, y probaren a satisfacción del Tribunal Supremo que habían practicado durante cinco años por lo menos, en un bufete de un abogado autorizado por el Tribunal Supremo para ejercer en Puerto Rico, o que habían servido satisfactoriamente, por cuatro años, el cargo de juez municipal, fueran admitidos sin examen, probando que reúnen las condiciones expresadas; conteniendo la ley otras disposiciones y reglas en cuanto a los admitidos en la Corte de Distrito de los Estados Unidos para Puerto Rico.

En el mismo año 1925, por Ley No. 91, de 22 de agosto, se enmendó la sección 3 de la de 13 de abril de 1916, con respecto a los que obtuvieran su diploma en la Universidad de Puerto Rico. Para nuestro caso presente, esta Ley no tiene aplicación.

Tampoco tiene aplicación al presente caso la enmienda de 1927, Ley No. 12, referente a exención de examen para los graduados de la Universidad de Puerto Rico, en ciertas condiciones.

La Ley No. 29 de 1927, enmienda la sección 2 de la ya citada de 13 de abril de 1916, en el sentido de que los no admitidos que tuvieren su diploma de Universidad nacional o extranjera serían admitidos previa prueba satisfactoria para el tribunal examinador, de ser ciudadanos *bona fide* de los Estados Unidos de América, presentación de diploma no obtenido por correspondencia, examen ante el Tribunal Supremo de Puerto Rico, o tribunal por él designado, e informe favorable de la comisión de reputación.

En 1928, se aprobó la Ley No. 78, a la que se acogen los peticionarios en estos casos. Según esta Ley, que enmienda

la sección 4 de la No. 38 de 1916 aquellos graduados como abogados en universidad acreditada de Europa o Estados Unidos, que probasen a satisfacción del Tribunal Supremo que han practicado por lo menos durante cinco años en bufete de abogado autorizado por el Tribunal Supremo para ejercer en Puerto Rico, y los que han servido satisfactoriamente el cargo de juez municipal durante cuatro años, siendo graduados de universidad acreditada de las antes citada, podrán ser admitidos sin examen. El texto de Ley es éste:

"Sección 4.—Toda persona de buena conducta moral que hubiere sido admitida a ejercer la abogacía en la Corte Suprema de cualquier Estado o Territorio de los Estados Unidos, o del Distrito de Columbia, o en la Corte de Distrito de los Estados Unidos para Puerto Rico y hubiera estado ocupado activamente en el ejercicio de la abogacía durante dos años o más, incluyendo por lo menos un año de ejercicio en la Corte de Distrito de los Estados Unidos para Puerto Rico, y todo aquel que, siendo ciudadano de los Estados Unidos, graduado de abogado en alguna universidad acreditada de Europa o de Estados Unidos probare a satisfacción del Tribunal Supremo de Puerto Rico, que ha practicado durante cinco años por lo menos en algún bufete de un abogado autorizado para ejercer su profesión por el Tribunal Supremo de Puerto Rico, o que ha servido satisfactoriamente el puesto de juez municipal por espacio de cuatro años, en ambos casos con anterioridad a la aprobación de esta Ley, podrá ser admitido a ejercer en las cortes de Puerto Rico, sin examen, dirigiendo por escrito una solicitud a la Corte Suprema y presentando a dicha corte el informe favorable de la Comisión de reputación, y pruebas satisfactorias de haber sido admitido a ejercer ante cualquiera de las cortes mencionadas en esta sección, y de que ha estado postulando debidamente ante cualesquiera de dichas cortes de acuerdo con lo dispuesto en la presente y por el término prescrito en la misma; *Disponiéndose, sin embargo,* que las disposiciones de esta sección que requieren que el que solicite su admisión al ejercicio de la abogacía en las cortes de la Isla haya estado ocupado activamente en el ejercicio de la abogacía durante dos años o más no serán aplicables a aquellas personas que hayan sido admitidas a practicar y hayan postulado en la Corte de Distrito de los Estados Unidos, para Puerto Rico, con dos o más años de anterioridad al 20 de mayo de 1925; *Disponiéndose, además,* que tales personas serán admitidas al ejercicio de la abogacía en las cortes insulares de Puerto Rico sin

sufrir ningún otro examen, dirigiendo por escrito una solicitud a la Corte Suprema y presentando a dicha corte el informe favorable de la Comisión de Reputación y prueba satisfactoria de haber sido admitida a ejercer ante cualesquiera de las cortes mencionadas en esta sección por dos o más años con anterioridad a la aprobación de esta Ley y prueba de haber postulado debidamente ante cualesquiera de las cortes dichas; *Y disponiéndose, finalmente,* que toda persona que en o antes del 20 de mayo de 1925, no estuviere facultada para ejercer la profesión de abogado en la Corte de Distrito de los Estados Unidos para Puerto Rico, para poder ser admitida a ejercer en las cortes insulares, además de llenar los requisitos exigidos anteriormente, tendrá que poseer un diploma de abogado expedido por una universidad acreditada a satisfacción de la Corte Suprema de Puerto Rico.''

La teoría general, y sostenida por la mejor práctica y la más sana lógica, es que, como los abogados son funcionarios de los tribunales, el poder para admitir aspirantes al ejercicio de la profesión, es judicial, y no legislativo, y con él están investidos los tribunales solamente. Parece uniforme la doctrina de que esa facultad de admisión de abogados, es de orden judicial, y no legislativo.

En el caso *Ex-Parte Garland,* 4 Wall 333, la Corte Suprema de los Estados Unidos confirmó esta doctrina, y en el caso *Ex-Parte Secombe,* 19 How. 9 U. S., se dice por el mismo tribunal que

''Por las reglas y práctica de las cortes de ley común, es exclusivamente para los tribunales determinar quién está calificado para ser, o continuar siendo, uno de sus oficiales, como abogado de la corte; tal poder es regulado, no obstante, por una sana y justa discreción judicial, salvaguardando los derechos e independencia de la profesión, tanto como la dignidad y autoridad del tribunal.''

En este caso, son de notar las siguientes circunstancias:

(*a*) Que se trata de una resolución de una Corte de Distrito de los Estados Unidos que ejercía poderes de Corte de Circuito.

(*b*) Que la decisión dice que ''en una corte de ese carácter, las relaciones entre la corte y los abogados que ante

ella ejercen, y sus derechos y deberes respectivos, se hallan reguladas por la ley común.''

(c) Que el caso no fué de admisión al ejercicio de la profesión, sino de eliminación del abogado.

De notar es también, que la Legislatura del Estado (Minnesota) había, por medio de estatuto, prescrito las condiciones que debía llenar un aspirante para ser admitido a ejercer como abogado, y las faltas que podrían acarrear su destitución, y el procedimiento para esto; y el reclamante hizo constar que no aparecía que se le hubiera enjuiciado por alguna falta o delito. Pero la Corte Suprema opinó que el estatuto no había hecho otra cosa que dar eficacia a reglas generales de la ley común sobre las que siempre habían actuado los tribunales.

El caso *Ex-Parte Wall* 107 U. S. R. 265, se refiere también a la eliminación de un abogado, sin que hubiere una convicción criminal en proceso separado; y en él se sostiene que el procedimiento para destituir es de los que están en la propia jurisdicción del tribunal ante el que él ejerce; y no viola la disposición constitucional que requiere una acusación y un juicio por jurado en casos criminales; que no es un procedimiento penal, dirigido al castigo, sino para proteger a la corte contra la intervención oficial de personas que no tienen condiciones para ejercer como abogados ante la misma.

El caso de *People* v. *Bissel*, 68 Am. Dec. 591, fué uno en que se trató de una petición de *mandamus* contra el gobernador de un Estado. La corte estudia con gran acierto la cuestión de división de poderes, o independencia de poderes en el Estado, y resuelve que cada departamento del gobierno tiene su propia esfera constitucionalmente, y actúa en ella con independencia; pero define el derecho de las cortes a determinar cuál es el sentido de las leyes aprobadas por la legislatura y también si la legislatura tiene el poder de pasar tales leyes.

En el caso *In Re Application for License to Practice Law*, decidido por la Corte Suprema de Apelación de West Vir-

ginia en 15 de marzo de 1910, 67 S. E. 597, encontramos que un estatuto de West Virginia, establece, entre otros particulares, con respecto a la licencia para ejercer la abogacía, lo que sigue:

"Y la Corte Suprema de Apelación puede, al presentársele una copia debidamente certificada de la resolución de la corte del condado, antes mencionada, y al quedar satisfecha de que el peticionario ha demostrado, mediante examen celebrado de conformidad con dicho reglamento, que está debidamente capacitado para ejercer la profesión de abogado ante las cortes de este Estado, y al quedar convencida asimismo de que tal reglamento ha sido cumplido en todas sus partes, expedir una licencia a dicho peticionario para que pueda ejercer la profesión de abogado ante las cortes de este Estado, y tal licencia deberá demostrar de su propia faz que todas las disposiciones de esta sección y de dicho reglamento han sido cumplidas, y, disponiéndose, que cualquier persona que presente copia debidamente certificada de tal resolución expedida por una corte de condado de este Estado, así como un diploma de graduación del colegio de leyes de la Universidad de West Virginia, tendrá derecho, a la presentación de tales documentos ante cualquiera de las cortes de este Estado, a ejercer la profesión de abogado ante todas las cortes del mismo, y la resolución admitiéndole al ejercicio de la abogacía deberá especificar todos los hechos relativos a tal admisión."

El peticionario en aquel caso presentó certificación de la facultad de Leyes de la Universidad, y copia certificada de orden de la corte, demostrando haber comparecido y probado su edad, buena reputación y residencia; y pidió la licencia para ejercer la profesión.

La Asociación de Abogados de la ciudad de Charleston se opuso a la admisión del peticionario, exponiendo sus razones, y presentando la prueba de sus alegaciones de hecho. Compareció el peticionario, e hizo petición *to quash,* fundada en ciertos méritos. En lo que es aplicable a este caso, citamos lo dicho por la corte al resolver:

"Estas proposiciones envuelven hasta cierto punto, la cuestión del poder de la legislatura para prescribir cualificaciones, reglas y reglamentos para obtener licencia y admisión al ejercicio de la abogacía, así como la de la propia interpretación del estatuto. Algunas

cortes niegan la autoridad de la legislatura, sobre la base de que las cortes tienen el exclusivo derecho de prescribir por sí mismas las cualificaciones de los auxiliares de la justicia, y las reglas y reglamentos para su admisión, sin interferencia de una rama co-ordinada del gobierno. In re Day, 181 Ill. 90, 54 N. E. 646; 50 L. R. A. 519, In re Moseness, 39 Wisc. 509, 20 Ann. Rep. 55; In re Splane, 123 Pa. 527, 16 Atl. 481; In re Branch, 70 N. J. Law 537, 57 Atl. 431. La corte de Illinois en In Re Day negó la autoridad de la legislatura para requerir que la posesión de un certificado de graduación de una escuela de ley de cierta calidad (*standard*) da derecho al que lo tiene para ser admitido al ejercicio de la profesión. Tal derecho, por el contrario, ha sido sostenido en New York. Véase asimismo, In re Applicants for license to Practice Law, 143 N. C. 1, 55 S. E. 635, L. R. A. (N. S.) y nota 288.

Y en la misma opinión se lee:

"Pero, no obstante la jurisdicción de las cortes sobre la materia, se ha concedido generalmente que la legislatura puede, en el ejercicio de su *police power*, dictar reglas razonables y reglamentos para la admisión al ejercicio de la profesión, que serán seguidas por las cortes. Pero la legislatura no puede imponer reglas irrazonables, o privar a las cortes de su poder inherente para dictar otras reglas y condiciones de admisión para el ejercicio de la abogacía. In re Day *supra*, 181 Ill. 95, 54 N. E. 646, 50 L.R.A. 519; In re Leachi, 134 Ind. 665, 671, 672, 34 N. E. 641, 21 L.R.A. 701; 3 Am. & Eng. Ency. Law 287; 4 Cyc. 900; Ex-Parte Secombe, *supra;* In re Goodell, 39 Wis. 232, 20 Ann. Rep. 42.

Del caso Goodell, *supra*, se cita en la decisión de que tratamos, una parte interesante, de la que tomamos lo que sigue:

"Ciertamente, la legislatura, alguna que otra vez ha asumido el poder de prescribir reglas para la admisión de abogados al ejercicio de la profesión. Cuando éstas han parecido razonables y justas ha sido, generalmente, creemos, la voluntad de las cortes actuar de acuerdo con tales estatutos, en deferencia a los deseos de una rama coordinada del gobierno, sin considerar la cuestión de poder."

Y hablando del acta de 1849, la misma corte en el caso Goodell, dice:

"Si, desgraciadamente, volviera a realizarse tal ataque a la dignidad de las cortes, sería tiempo de que ellas inquirieran si la regulación de la admisión está dentro del poder legislativo o dentro del

poder judicial. Mientras tanto es un placer deferir a todo estatuto razonable acerca de la materia.''

En la citada decisión *In Re Application for License to Practice Law,* de West Virginia, se lee:

''En 3 Am. & Eng. Ency. L., página 287, se dice, de conformidad con algunos de los casos citados, que: 'Está dentro de las facultades de la legislatura prescribir los requisitos necesarios para la admisión al ejercicio de la abogacía, y las cortes no tienen autoridad para admitir a ninguna persona que no reúna los requisitos necesarios.' 'Pero la admisión de un aspirante al ejercicio de la profesión es un acto judicial, y el abogado al ser admitido se convierte en un funcionario y miembro de la corte; por tanto, la legislatura no tiene facultad para disponer que cualquier persona que reúna ciertos requisitos deba ser admitida; ésta no puede asumir funciones judiciales y en todo caso las cortes están investidas de la discreción necesaria en cuanto a si un aspirante tiene derecho a ser admitido.' ''

En el caso *In Re Day,* de Illinois, 54 N. E. Rep. 646, se discute extensamente si la facultad o poder para admisión es legislativa o judicial. Como fundamento, se presenta por la corte la historia de la admisión de abogados en Inglaterra, y al tratarse de los Estados Unidos, se dice:

''En esta nación las cortes de los Estados Unidos han regulado *(controlled)* la admisión de abogados. El primer Congreso reconoció su poder en esa materia, y ellas lo han retenido siempre.''

Y en la opinión (de la mayoría) se cita el caso *Ex-parte Garland,* 4 Wall 333, y se reafirma la doctrina de que la admisión de abogados no es de mero poder ministerial, sino un poder judicial. Se trata asimismo de la decisión en el caso *In re Cooper,* 22 N. Y. 67, en el que se sostuvo que el estatuto de la legislatura en que se admitía al ejercicio de la abogacía con diploma de Columbia College, era válido. En la decisión del caso *In re Cooper,* 22 N. Y. 183, 8 Smith, Court of Appeals Cases, se lee:

''La Corte Suprema al resolver una solicitud sobre admisión al ejercicio de la abogacía, está actuando en funciones judiciales y no en el ejercicio de funciones puramente administrativas.''

En ese caso concreto se trató de la ley que, de la posesión de un título expedido por la Universidad de Columbia, hacía el único requisito previo para la admisión, y sustituía por el examen en dicha universidad el que se sufría en la corte. Pero como se ve, ni aún en ese caso rindió el poder judicial su privilegio en la materia de la admisión, al menos desde el punto de vista de la doctrina legal, que quedó sostenida en el párrafo que del *Syllabus* de la opinión hemos copiado. Es cierto que en la opinión se declara que el peticionario tiene el derecho, por ley, de ser admitido. Pero lo es asimismo que tal derecho tiene por base fundamental y primaria, que la constitución del Estado "confiere el derecho absoluto de ser admitida, a toda persona que posea los requisitos necesarios."

En el caso *Ex-Parte Garland,* 71 U. S. R. 333, es cierto que se trató del poder de admisión con relación a cortes federales, pero la doctrina declarada es de suma importancia. Se sostiene allí que los abogados no son funcionarios de los Estados Unidos, sino funcionarios de las cortes, admitidos por éstas bajo la prueba de sus suficientes conocimientos legales y buena conducta privada, y que su admisión y su exclusión no es el ejercicio de un poder ministerial, sino el de un poder judicial.

Del precedente estudio obtenemos el convencimiento de que la facultad de admisión de aspirantes al ejercicio de la abogacía, es más de poder judicial que de ningún otro poder. Indudablemente, si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos se encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a

los que pretenden ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres.

Innegable el poder de las legislaturas para prescribir reglas, y exigir condiciones a llenar por los que desean ser admitidos al ejercicio de la profesión. Pero creemos que ese poder no puede ejercitarse en sentido que se determine la admisión forzosa por los tribunales; y creemos que nunca ha sido la tendencia de esta legislatura, ni de ninguna otra anular el poder inherente y necesario de los tribunales en lo que afecta a la admisión de sus funcionarios.

Creemos que el término, "podrá ser admitido", que se emplea en la ley, salva la facultad de la Corte Suprema para admitir o no, al aspirante. No se emplea el término imperativo "deberá"; lo que nos lleva a creer que la legislatura ha respetado la facultad de orden judicial, de esta corte, para la admisión.

■ Cuando existen dos interpretaciones de la Ley, una de acuerdo con su constitucionalidad, y la otra no, es la práctica de los tribunales ajustarse a la primera. A menos que el derecho que se trata de ejercitar sea claramente contrario a la Constitución, el deber del tribunal es seguir la voluntad de la Legislatura; así lo ha sostenido este tribunal en el caso *Ponce Lighter Co.* v. *Municipio de Ponce et al.,* 19, D.P.R. 760–790; manteniendo la misma doctrina en los casos *El Pueblo* v. *Neagle,* 21 D.P.R. 356, y *El Pueblo* v. *Subirá,* 27 D.P.R. 615. Y en ese sentido declaramos que el propósito de la Legislatura no fué el de restar al Tribunal Supremo su facultad y poder para admitir, o no, a los aspirantes al ejercicio de la abogacía. La fórmula empleada por la ley de que se trata "podrá ser admitido", facultativa o permisiva, y no imperativa, nos sostiene en esa conclusión.

En los exámenes sufridos por los aquí peticionarios ellos no tuvieron éxito en la tarea de demostrar su preparación. El tribunal está en el deber de requerir prueba de que aquella situación ha cambiado.

■ Sería muy difícil establecer lo que se estima por práctica en el bufete de un abogado autorizado, a menos que la realización de trabajos de carácter auxiliar se denomine "práctica." La práctica profesional tiene una gran variedad de manifestaciones: la del jurisconsulto, que estudia y resuelve problemas de Derecho, presenta soluciones y aconseja determinaciones: la del abogado que asiste a los tribunales, y entiende en la celebración de los juicios, y argumenta sus pretensiones en los pleitos o en las causas: la del que prefiere el trabajo de redación de alegaciones y alegatos, o el de preparación de los casos para juicio. De todas formas, a este tribunal compete el declarar si la práctica de que se hace mérito por un peticionario que la alega, sería suficiente, tal como se alega y demuestra, para convencer de la capacidad del peticionario.

*Se deniegan las solicitudes de los peticionarios Aníbal E. Boneta y Néstor A. Boneta para ser admitidos al ejercicio de la profesión de abogado, sin examen.*