EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo para la Protección del Patrimonio Arquelógico Terrestre de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Gobierno Municipal de Barceloneta, Sol Luis Fontánez Olivo, Alcalde<br><br>Peticionario | Certiorari<br><br>2006 TSPR 102<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2004-462

Fecha: 20  de junio de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan-Panel II

Jueza Ponente:

        Hon. Mildred G. Pabón Charneco

Abogado de la Parte Peticionaria:

        Lcdo. Alejandro G. Carrasco Castillo

Abogada de la Parte Recurrida:

        Lcdo. Esperanza Esteban Rodríguez

Materia: Impacto Yacimiento Arqueológico Angostura

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo para la Protección del
Patrimonio Arqueológico Terrestre
de Puerto Rico

     Recurrido

                                   CC-2004-462     Certiorari

        v.

Gobierno Municipal de Barceloneta,
Sol Luis Fontánez Olivo, Alcalde

     Peticionario


Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez


San Juan, Puerto Rico, 20 de junio de 2006

El Gobierno Municipal de Barceloneta cuestionó en este recurso la facultad del Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico para emitir, *motu proprio*, una orden paralizando unos trabajos de mantenimiento y limpieza en un canal de escorrentía que efectuaba el Municipio. El Municipio adujo que el Consejo se excedió en sus facultades al paralizar dichas labores ya que su ley orgánica no le facultaba para así actuar.

El foro apelativo intermedio sostuvo que el Municipio no agotó los procedimientos administrativos

ante el Consejo, por lo que declinó revisar la determinación administrativa. El peticionario rechazó esa conclusión y sostuvo que no existiendo facultad en ley para que el Consejo pudiera emitir dicha orden, la misma era nula por lo que se dictó sin jurisdicción para ello, y como resultado de lo cual no tenía que agotar los remedios administrativos.

Trabada así la controversia, pasamos a exponer el trasfondo fáctico del caso.

## I

En la primera semana del mes de noviembre de 2003, el Municipio de Barceloneta se encontraba realizando unas obras públicas de mantenimiento y limpieza de cauces pluviales. Entre los lugares que limpiaba se encontraba el canal de escorrentía localizado al oeste del establecimiento comercial conocido como Prime Outlets. Este canal discurre en dirección norte, paralelo a la Carretera Estatal P.R. 140.

El canal se encontraba obstruido por chatarra abandonada, así como otros desperdicios sólidos, incluyendo unos treinta a cuarenta postes de hormigón que obstruían el canal. Los trabajos de limpieza consistían en la remoción de los escombros y del sedimento y en la tala de la vegetación circundante al canal que obstruía el flujo normal del agua. El Municipio alegó que la obstrucción del canal producía inundaciones en las comunidades aledañas por lo que era imprescindible su limpieza.

El 6 de noviembre de 2003, el Arqueólogo Carlos Pérez Merced le notificó al Municipio un boleto de falta administrativa imponiendo una multa de $10,000, bajo el fundamento que los trabajos que desempeñaba el Municipio habían impactado un área arqueológica reconocida y además, porque el Municipio no había notificado al Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico (el "Consejo"), del hallazgo de materiales arqueológicos como requiere la Ley Núm. 112 de 20 de julio de 1988, según enmendada, 18 L.P.R.A. secs. 1551 *et seq.*, ("Ley Núm. 112").[1] Se le ordenó al Municipio que en un término no mayor de quince (15) días presentara ante el Consejo los planos, permisos y memorial explicativo que le autorizaban a llevar a cabo dichos trabajos. En esa misma fecha, también le fue notificada una orden de paralización de los trabajos que se efectuaban.[2]

El 12 de noviembre de 2003, el Consejo notificó al Municipio un nuevo boleto de falta administrativa por alegadamente haber hecho caso omiso tanto de la orden de presentar los correspondientes planos y permisos, así como de la orden de paralización.[3] Inconforme con la acción del Consejo, el 14 de noviembre de 2003, el Municipio presentó una solicitud de reconsideración de la orden de paralización emitida. Indicó en la misma que era imprescindible que ésta se dejara sin efecto toda vez que

---

[1] Apéndice del recurso de certiorari, pág. 47.
[2] *Id.*, pág. 46.
[3] *Id.*, pág. 49.

los trabajos de limpieza del canal eran necesarios para aliviar el problema de inundaciones de áreas circundantes que se generaba como consecuencia de la obstrucción del canal pluvial.

El 21 de noviembre, el Municipio presentó una nueva moción ante el Consejo notificando que retiraba la moción de reconsideración presentada porque entendía que el Consejo se había excedido en sus facultades al emitir la orden de paralización.

El 24 de noviembre, el Consejo emitió una resolución en la que modificó su orden de paralización indicando lo siguiente:

> Vista la solicitud de reconsideración de orden de paralización, presentada por la parte querellada, la misma fue evaluada por los Miembros del Consejo.
>
> Evaluada dicha solicitud, el cuerpo Consejal no tiene objeción a lo planteado y solicitado siempre y cuando se obtenga la autorización del dueño de los terrenos y se acredite que las personas a las que les solicita el permiso son los dueños registrales de la porción a ser afectada.

En esta resolución nada se señaló sobre la moción retirando la solicitud de reconsideración.

Así las cosas, el 8 de diciembre de 2003 el Municipio acudió ante el Tribunal de Apelaciones del dictamen del Consejo de paralizar las obras de mantenimiento y limpieza del canal pluvial. En su escrito, cuestionó la facultad del Consejo para dictar órdenes de paralización. Argumentó que la sección 11 de la Ley Núm. 112, 18 L.P.R.A. sec. 1561, disponía que para procurar una orden de paralización

el Consejo tenía que acudir al Tribunal de Primera Instancia para que fuera éste quien emitiera la misma. Arguyó que la letra de la ley era clara y no admitía interpretación en contrario.

El 18 de diciembre de 2003, el Consejo se opuso al recurso instado por el Municipio fundamentado, principalmente, en que éste tenía que agotar los procedimientos administrativos disponibles de la Ley Núm. 112 y la Ley de Procedimiento Administrativo Uniforme de Puerto Rico, Ley Núm. 70 de 12 de agosto de 1988, según enmendada (en adelante "L.P.A.U").[4] Adujo además que tanto la Ley Núm. 112, como el Reglamento sobre Multas Administrativas promulgado al tenor de ésta, en su sección 9.04, facultaba al Consejo a ordenar dicha paralización para hacer cumplir el mandato de la Ley Núm. 112.

Mediante sentencia de 16 de marzo de 2004, el foro apelativo intermedio confirmó la determinación del Consejo. Determinó que el Consejo no había emitido una resolución final sobre la controversia, por lo que declinaba revisar el recurso en esa etapa de los procedimientos. Indicó, además, que la orden de paralización no ocasionó un daño irreparable al Municipio y que no estaba claro si en efecto, el Consejo carecía de jurisdicción para emitir un remedio de esa naturaleza.

Inconforme, el Municipio recurrió ante este Tribunal, vía *certiorari*, en revisión de dicha sentencia. En su

---

[4] 3 L.P.R.A. sec 2101, *et seq*.

escrito señaló la comisión de tres errores.[5] El 25 de junio

de 2004 denegamos la expedición del auto de certiorari

presentado; en reconsideración, expedimos el mismo.

Contando con la comparecencia de las partes, estamos en

posición de resolver y pasamos a así hacerlo.

## II

La Ley Núm. 112 de 20 de julio de 1988, declaró de

utilidad pública y patrimonio del Pueblo de Puerto Rico,

los yacimientos, objetos, artefactos, documentos o

---

[5] Los errores señalados por el Municipio de Barceloneta fueron los siguientes:

1) Cometió error el Tribunal de Apelaciones al resolver que en la situación de hechos del caso el Municipio de Barceloneta debía agotar los remedios administrativos ante el Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico antes de recurrir al foro judicial, a pesar de que se trata de una situación clara en que el organismo administrativo actuó de forma ultra vires al dictar una orden decretando la paralización de unas obras públicas de mantenimiento que realizaba el Gobierno Municipal de Barceloneta ya que la Asamblea Legislativa no le delegó el poder de dictar órdenes de paralización.

2) Procedía la revisión de la resolución administrativa ante el Tribunal de Apelaciones no obstante el hecho de que se trataba de una resolución interlocutoria. Por tratarse de una orden ultra vires, el Municipio de Barceloneta podía preterir el trámite administrativo y recurrir directamente en revisión judicial.

3) Cometió error el Tribunal de Apelaciones al denegar el auto solicitado ya que el Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico carece de autoridad legal para emitir órdenes de paralización.

materiales arqueológicos; reconociendo así el valor incalculable de los mismos no tan solo para la investigación y el análisis en el campo de la antropología, sino también para nuestra herencia cultural e histórica como pueblo caribeño. La Exposición de Motivos de la Ley Núm. 112 claramente establece que el "fin primordial [de la ley es] estimular y asegurar el inventario científico y la protección de esa parte de nuestra herencia cultural e histórica. Con ello, se podrá estimular y facilitar la investigación antropológica y se atiende en forma satisfactoria y halagadora a las demandas de la cultura y el espíritu."

Para hacer efectivo el mandato de ley, el estatuto dispuso para la creación del Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico. El mismo está adscrito al Instituto de Cultura Puertorriqueña y tiene como objetivo, "proteger y custodiar estos recursos arqueológicos y a la vez fomentar el inventario científico y el estudio de estos valores arqueológicos en armonía con la política pública del Estado Libre Asociado de Puerto Rico." Sección 2, Ley Núm. 112, 18 L.P.R.S. sec. 1552.

La Ley Núm. 112 enumeró las potestades del Consejo, entre las cuales destaca la facultad para imponer multas administrativas así como la de demandar y ser demandada. 18 L.P.R.A. secs. 1563 y 1554(j), respectivamente. Esta ley le reconoció al Consejo amplios poderes para implementar la política pública establecida por la misma,

indicando que este organismo podrá "ejercer todas las acciones necesarias para lograr el eficaz cumplimiento de los propósitos del Capítulo." 18 L.P.R.A. sec. 1554 (d). A su vez, le facultó para "ejercer **todos los poderes que sean incidentales y necesarios** para el cabal desempeño de las responsabilidades y deberes **que por ley se le asignan.**" (Énfasis nuestro.) 18 L.P.R.A. sec. 1554 (k).

La controversia en este caso gira en torno a la facultad que le fue conferida en la sección 11 de la Ley Núm. 112, donde se dispone:

Cuando se realicen obras de construcción, excavación, extracción o movimiento de tierra sin la autorización requerida en la sección 10[6] de

---

[6] La sección 10 de la Ley Núm. 112 de 20 de julio de 1988, 18 L.P.R.A. sec. 1560, lee como sigue:

**Obras- Movimiento de tierras; autorización requerida**

A partir de la fecha de aprobación de esta ley, no se podrá iniciar ni continuar obra de construcción o reconstrucción, ni trabajos de trabajos [sic] de excavación, extracción o movimiento de tierras en lugar alguno del que haya documentación previa o indicios fidedignos de presencia de material arqueológico, a menos que se obtenga autorización del Consejo.

Cuando la obra de construcción o reconstrucción, de excavación, extracción o movimiento de tierras sea en un lugar del cual no haya documentación previa o indicios fidedignos de presencia de material arqueológico y, sin embargo, luego de iniciadas las mismas se descubra cualquier material arqueológico, el contratista o el dueño de la obra, según sea el caso, deberá suspender la misma y notificar al Consejo dentro de las veinticuatro (24) horas siguientes a dicho hallazgo, a fin de poder obtener la autorización correspondiente para la continuación de la obra o trabajos de que se trate.

esta ley, o se violen las condiciones impuestas en la autorización concedida, **el Consejo podrá recurrir al Tribunal de Primera Instancia para que emita una resolución ordenando la paralización o suspensión de las obras de que se trate, hasta tanto se cumplan con los requisitos de este capítulo.** El tribunal podrá obligar a demoler lo hecho y restaurar o reconstruir el material, estructura o lugar si la obra realizada modifica o destruye la autenticidad o el valor del contenido arqueológico. Si el daño fuere irreparable, el responsable resarcirá al Pueblo de Puerto Rico por los daños causados.

El Municipio entiende que para obtener una orden de paralización de una obra el Consejo **tiene** que acudir a los tribunales para que éstos emitan la misma, si así lo entiende procedente. Por el contrario, el Consejo arguye que como parte de sus poderes incidentales y necesarios para cumplir con el mandato de la Ley Núm. 112, está facultado para *motu proprio* emitir órdenes de paralización y evitar así daños mayores a los yacimientos arqueológicos.

Además, nos indicó que el lenguaje de la sección 11 habla en términos potestativos no mandatarios, al indicar que el "Consejo **podrá** recurrir al Tribunal de Primera Instancia . . . ." (Énfasis nuestro.) A base de lo cual concluye: "Toda vez que el verbo utilizado por el legislador, podrá, es uno de carácter optativo, dando así la libertad para hacer o no hacer."[7] Es decir, es discrecional del Consejo acudir o no al tribunal en búsqueda de una orden de paralización y cuando opte por no hacerlo, puede *motu proprio* emitir la misma. Finalmente,

_____

[7] Alegato de la parte recurrida, pág. 17.

indicó que la interpretación de un ente administrativo de su estatuto habilitador goza de gran deferencia por lo que debemos acoger la interpretación propuesta por el Consejo.

**III**

Definida bajo estos términos la controversia ante nuestra consideración, debemos auscultar con mayor detenimiento el texto mismo de la sección en controversia, así como el historial legislativo de la Ley Núm. 112, en búsqueda de una respuesta.

**A**

La amplia delegación de facultades cuasi-legislativas y cuasi-judiciales a las agencias administrativas es una de las características sobresalientes del estado moderno. El arsenal administrativo contemporáneo requiere de la delegación de estos poderes, pues son los que permiten hacer efectivas y viables las funciones encomendadas al organismo administrativo.

La delegación de poderes cuasi-judiciales incluye no sólo la potestad de resolver controversias sino también la de dictar remedios. La orden de paralización u orden de cesar y desistir es uno de los remedios que le pueden ser delegados a las agencias administrativas. El profesor Swartz nos señala:

> Administrative agencies **may also be given injunctive power, though the name 'injunction'** is not used. **The cease and desist orders that may be issued by most regulatory agencies are the administrative equivalents of prohibitory injunctions.**

B. Schwartz, *Administrative Law*, Little Brown & Co., Canada, 3era Ed., 1991, pág. 93. Véase también, Davis, *Administrative Law Text*, West Publishing, New York, 3era Ed., 1972, págs. 211-212.

Al repasar las leyes orgánicas de varias agencias administrativas del Estado Libre Asociado de Puerto Rico, encontramos expresamente tal facultad delegada. Así ocurre, por ejemplo, con la Ley de la Junta de Planificación, 23 L.P.R.A. sec. 62j(a) (Art. 2, inciso 9); la Ley de la Administración de Reglamentos y Permisos, 23 L.P.R.A sec. 71x (Art. 25); la Junta de Calidad Ambiental, 12 L.P.R.A. sec. 1131 (22); la Ley de Telecomunicaciones de Puerto Rico, 27 L.P.R.A. sec. 267f(3); y, el Departamento de Asuntos del Consumidor, 3 L.P.R.A. sec. 341-l(b) (Art. 4). Como ya vimos, la Ley Núm. 112, también provee para la emisión de una orden de paralización. La pregunta ahora es a quién le corresponde la facultad de dictar la misma.

**B**

Una lectura integrada de las disposiciones de la Ley Núm. 112, específicamente de las secciones 10 y 11, nos provee la respuesta.

La sección 10 de la Ley Núm. 112, describe las acciones que constituyen infracciones a la ley. En específico, se dispone que no se puede iniciar o continuar una obra de construcción o reconstrucción, u otros trabajos, en lugares en que previamente se ha identificado que yacen materiales arqueológicos, salvo que se obtenga

previamente autorización del Consejo. Por otro lado, cuando en cualquier otro lugar y mientras se lleven a cabo unas obras, se descubran artefactos arqueológicos, procede que se notifique de inmediato al Consejo y no se continúe con los trabajos. Finalmente, la sección dispone que una violación de lo allí dispuesto constituye un delito grave. 18 L.P.R.A. sec. 1560.

La sección 11, por su parte, dispone específicamente que cuando se realicen obras de construcción, excavación, extracción o movimiento de tierra, sin la autorización que exige la sección 10 de la ley, **"el Consejo podrá recurrir al Tribunal de Primera Instancia para que emita una resolución ordenando la paralización o suspensión de las obras de que se trate."** La sección también provee los remedios que el propio tribunal tiene disponible ante una violación de la Ley Núm. 112.

**Hay que destacar que esta sección es la única sección en la ley que hace referencia a la paralización o suspensión de unas obras que se efectúan en violación al mandato de la Ley Núm. 112. Y como se puede apreciar, el lenguaje apunta a que quien la puede emitir es el tribunal y no el Consejo.** Esta parece ser la lectura más razonable de dicha sección.

El Consejo arguye, como apuntamos, que como la ley utiliza el vocablo "podrá" ello es indicativo de que es discrecional acudir o no al tribunal para solicitar dicho remedio y, cuando se opte por no acudir, el Consejo

entonces queda facultado para, **motu proprio**, emitir la misma. Esta lectura se revela forzada y algo atropellada. La tesis del Consejo nos plantea varios inconvenientes. En primer lugar, aun cuando la primera parte de la aseveración es correcta; es decir, que es discrecional del Consejo acudir o no al tribunal en búsqueda de una orden de paralización, la conclusión a que llega no es atinada. La discrecionalidad que se reconoce no es a que el Consejo pueda emitir por sí una orden de paralización; sino que éste puede, enfrentado con unas acciones que violen la Ley Núm. 112, escoger, de entre sus poderes delegados, la acción remedial que estime más adecuada. Así, puede optar por imponer una multa, demandar en el tribunal, presentar una querella criminal, o solicitar del tribunal que expida una orden de paralización.

Por otro lado, aunque la regla general es que los términos permisibles como "podrá" deben interpretarse como concediendo discreción y que los términos mandatarios como "deberá" deben interpretarse como que ordenan algo de forma concluyente, --e.g., *Capó v. A. Hartman & Cia*, 57 D.P.R. 196, 200 (1940), *Pueblo v. Díaz Torres*, 89 D.P.R. 720, 732 (1963), *Boneta ex parte*, 39 D.P.R. 154, 166 (1929), *Srio. de Justicia v. Tribunal Superior*, 95 D.P.R. 158, 161 (1967)-- hemos dispuesto en el pasado que cabe interpretar a los mismos indistintamente si de esa forma se logra cumplir con el propósito del estatuto. *Espasas Dairy Inc. v. JSM,* 94 D.P.R. 816, 826 (1967). En este caso "podrá" no

tiene el alcance pretendido, se refiere más bien a que sólo procede la orden de paralización cuando la expida el tribunal, solo con esta interpretación hacemos cumplir el propósito de la ley.

Reiteradamente hemos señalado que el objetivo de la interpretación estatutaria es poner en vigor y hacer efectiva la intención del legislador; por lo que nuestra interpretación debe propender hacer eficaz el objetivo perseguido por el legislador. *Departamento de Hacienda v. TLD*, res. 17 de marzo de 2005, 163 D.P.R. ___, 2005 TSPR 32. Cuando el lenguaje es claro e inequívoco, "el texto de la ley es la expresión por excelencia de la intención legislativa." *Pérez Pérez v. Gobierno Municipal de Lares,* 155 D.P.R. ___ (2001). En este caso, como vimos, no tan solo es claro el texto de la ley sino, como veremos también, lo es su historial legislativo.

**IV**

En el año 1985 se presentaron tres proyectos de ley con el propósito de crear un organismo administrativo para salvaguardar los yacimientos arqueológicos terrestres en Puerto Rico, a saber: el P. de la C. 8,[8] el P. del S. 68,[9] y finalmente, el P. de la C. 574,[10] que se convirtió en la Ley Núm. 112. En todos los proyectos se proveía para la expedición de órdenes de paralización. El Proyecto de la

---

[8] Presentado el 14 de enero de 1985.
[9] Presentado el 5 de febrero de 1985.
[10] Presentado el 11 de agosto de 1985.

Cámara Número 8,[11] contenía el siguiente lenguaje: "Cuando se realicen obras sin la autorización aquí requerida o se violen las condiciones impuestas en la autorización concedida, **la Comisión podrá**, **mediante orden judicial**, ordenar la paralización de un proyecto hasta que se cumplan con los requisitos de esta ley."[12] (Énfasis nuestro.)

Por su parte, en el Proyecto del Senado Número 68,[13] contenía un lenguaje distinto, específicamente facultaba a la Junta a emitir dichas órdenes. La sección pertinente leía: "La **Junta podrá expedir órdenes provisionales de paralización** de trabajos, obras, procesos de construcción, reconstrucción, excavación, movimiento de tierras o cualquier otro, para que se tomen medidas preventivas o de control necesarias para cumplir con los propósitos de la ley."[14] (Énfasis nuestro.) Vemos entonces que ambas cámaras legislativas abordaban este asunto desde

---

[11] Referido a las Comisiones de Recursos Naturales y Calidad Ambiental, De lo Jurídico Penal y de Hacienda. Texto Aprobado en Votación Final por el Senado, 16 de enero de 1985, 10ma Asamblea Legislativa, Primera Sección Ordinaria, pág. 12.)

[12] Dicha sección sólo sufrió una enmienda: se sustituyó la palabra "Comisión" por "Consejo."

[13] Referido a las Comisiones de Desarrollo Social y Cultural, de Hacienda y de Gobierno Estatal, Texto Aprobado en Votación por el Senado, 16 de enero de 1986, 10ma Asamblea Legislativa 1era Sesión Ordinaria, pág. 11.

[14] En el primer Informe Conjunto del Senado sobre el P. de la S. 68, se hicieron unas enmiendas a dicha sección. Finalmente leía: "El Instituto de Cultura o la Junta podrá ordenar la paralización de las acciones antes mencionadas hasta tanto se cumpla con los requisitos de esta ley." Informe de las Comisiones de Desarrollo Social y Cultural de Hacienda y Gobierno Estatal, 6 de mayo de 1985, 10ma Asamblea Legislativa, 1era Sesión Ordinaria, pág. 6. Posteriormente se sustituyó la palabra Junta por Consejo.

perspectivas distintas.  El Senado interesaba otorgarle al Consejo dicha facultad expresamente, mientras que la Cámara le confería la facultad al tribunal.

Durante el debate en el Senado sobre el P. de la S. 68, el 24 de junio de 1985, el Senador Fas Alzamora propuso que se enmendara dicha sección.[15]  La enmienda propuesta disponía lo siguiente:  "El Instituto de Cultura o la Junta **podrá solicitar ante el organismo pertinente la paralización de las actividades** antes mencionadas hasta tanto se cumpla con los requisitos de esta ley."[16]  (Énfasis nuestro.)  La enmienda del senador Faz Alzamora asemejaba el proyecto en el Senado al texto del de la Cámara.

Posteriormente, los proyectos antes mencionados se sustituyeron por el P. de la C. 574, el cual finalmente culminó en la Ley Núm. 112.  En este proyecto el lenguaje que se incluyó inicialmente sobre las órdenes de paralización fue muy similar al lenguaje que contenía el P. de la C. 8 sobre éstas.  A saber:

> "Cuando se realicen obras sin la autorización aquí requerida o se violen las disposiciones impuestas en la autorización concedida, **la Comisión podrá, mediante orden judicial, ordenar la paralización de un proyecto** hasta tanto se cumplan los requisitos de esta ley."[17]

Una vez en el Senado, se enmendó nuevamente dicha sección, a los efectos de que dispusiera:  "El Consejo

---

[15] Diario de Sesiones del P. de la S. 68, 24 de junio de 1985, pág. 420.

[16] *Id*. pág. 417.

[17] Referido de las Comisiones de Recursos Naturales, Calidad Ambiental y de Gobierno, Texto de Aprobación Final por la Cámara, 7 de abril de 1986, 10ma Asamblea Legislativa, 2da Sesión Ordinaria, pág. 10.

podrá recurrir al Tribunal de Primera Instancia", así enmendada quedó finalmente aprobada convirtiéndose en ley.[18]

A la luz del historial legislativo antes expuesto, no nos cabe la menor duda que la intención del legislador fue facultar sólo a los tribunales a dictar órdenes de paralización. Este fue un tema debatido ampliamente por la Rama Legislativa, de ahí los innumerables cambios introducidos una y otra vez sobre esta disposición. Finalmente prevaleció aquella versión que dejaba en manos de los tribunales la facultad de emitir órdenes de paralización. No nos corresponde a nosotros pasar juicio sobre la sabiduría del esquema favorecido por el legislador. Nuestra función se circunscribe a, mediante nuestra interpretación del estatuto, hacer viable aquello que originalmente quiso establecer el legislador.

Antes de finalizar cabe destacar lo siguiente, la Ley Núm. 10 del 7 de agosto de 1987, 18 L.P.R.A. secs. 1501 *et seq.*, **aprobada con anterioridad a la Ley Núm. 112**, dispuso para la creación del Consejo para la Conservación y Estudio de los Sitios y Recursos Arqueológicos Subacuáticos, adscrito también al Instituto de Cultura y con funciones similares a las que después se le otorgarían al Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico. Esta ley sin embargo, **sí facultó expresamente al Consejo para la Conservación de Recursos Subacuáticos a**

---

[18] Diario de Sesiones del Senado de Puerto Rico sobre el P. de la C. 574, 23 de mayo de 1988, 10ma Asamblea Legislativa, 3era Sesión Extraordinaria, págs. 2056 y 2061.

**emitir *motu proprio* órdenes de cese y desista o de paralización.** Así, en su Art. 8, inciso g, se dispuso expresamente: "El Consejo tendrá los siguientes deberes y poderes: [. . .] (g) **Expedir, previa notificación y vistas, órdenes de hacer o no hacer, cesar y, desistir . . .** El Consejo podrá comparecer ante el Tribunal de Primera Instancia para solicitar que dicho tribunal ordene el cumplimento de cualquier orden o citación expedida por el Consejo." (Énfasis nuestro.) 18 L.P.R.A sec. 1508(g). Aún cuando esta ley estaba vigente al momento de la aprobación de la ley que hoy nos ocupa, y a pesar que las mismas tratan de asuntos casi idénticos, el legislador no tuvo a bien autorizar en la Ley Núm. 112 al Consejo a emitir por sí órdenes de paralización. Debemos respetar la voluntad del legislador y no podemos, como nos invita el Consejo, a desatender la clara intención legislativa.

Resolvemos por lo tanto, a base de la discusión que antecede, que la ley habilitadora del Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico no le autorizó a emitir, *motu proprio*, órdenes de paralización. Para ello, el Consejo tiene que solicitar el auxilio de los tribunales. Le corresponde a la Asamblea Legislativa modificar el estatuto para que se provea tal facultad con las salvaguardas correspondientes.

La orden emitida por el Consejo en el caso de referencia fue a todas luces nula y su actuación *ultra vires*. El Municipio de Barceloneta en su consecuencia, no tenía que

agotar remedios administrativos habida cuenta que el ente administrativo actuó al margen de sus facultades delegadas.[19] *E.g., Asociación de Pescadores v. Marina de Puerto del Rey, Inc.*, 155 D.P.R. 906 (2001); *Junta Examinadora v. Elías,* 144 D.P.R. 483 (1997); *Guadalupe Saldaña v. Pres. U.P.R.,* 133 D.P.R. 42 (1993); *Delgado Rodríguez v. Nazario Ferrer*, 121 D.P.R. 347 (1988).

Procede revocar la determinación del Tribunal de Apelaciones y dejar sin efecto la orden de paralización emitida contra el Municipio de Barceloneta.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

---

[19] Debe quedar meridianamente claro que, no pasamos juicio sobre la corrección y la cuantía de la multa impuesta al Municipio, toda vez que este asunto no se trajo ante nuestra consideración.

Tampoco expresamos criterio alguno si el Municipio, advertido de que el lugar donde trabajaba era uno donde yacían materiales arqueológicos, podía, en virtud de lo dispuesto en la sección 10 de la Ley Núm. 112, continuar sus labores de limpieza.

El asunto en este caso es uno de carácter procesal sobre cuándo y cómo procede una orden paralización bajo la Ley Núm. 112.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo para la Protección del
Patrimonio Arqueológico Terrestre
de Puerto Rico

    Recurrido

        v.                   CC-2004-462     Certiorari

Gobierno Municipal de Barceloneta,
Sol Luis Fontánez Olivo, Alcalde

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de junio de 2006

Por los fundamentos expuestos en la Opinión que antecede los cuales se incorporan íntegramente a la presente, procedemos a revocar la determinación del Tribunal de Apelaciones y se deja sin efecto la orden de paralización emitida contra el Municipio de Barceloneta.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre en el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo