EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico <br><br> Peticionario <br><br> vs. <br><br> Gabriel A. Pepín Cortés y Otros <br><br> Recurridos | Certiorari <br><br> 2008 TSPR 101 <br><br> 174 DPR \_\_\_\_ |

Número del Caso: CC-2007-371

Fecha: 29 de mayo de 2008

Tribunal de Apelaciones:

      Región Judicial de Caguas

Juez Ponente:

      Hon. Jorge L. Escribano Medina

Oficina del Procurador General:

      Lcdo. Salvador J. Antonetti Stutts
      Procurador General

Abogados de la Parte Recurrida:

      Lcda. Ana L. González Cabrera
      Lcdo. Frankie Gutiérrez Sierra

Materia: Infracción Arts. de Sustancias Controladas y Ley de Armas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                      CC-2007-371       Certiorari

Gabriel A. Pepín Cortés
y Otros

    Recurridos

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 29 de mayo de 2008.

En esta ocasión, nos corresponde determinar si la Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, concede un derecho de exclusión automática del público de la sala de vista preliminar cuando el Ministerio Público se propone presentar el testimonio de un agente encubierto que aún se encuentra en funciones. Analizada esta interrogante, concluimos que, si bien la referida disposición contempla una limitación al acceso del público en tales circunstancias, la misma no procede de forma automática.

**I**

Los hechos del presente caso no están en controversia. Contra los recurridos[1] se presentaron múltiples denuncias por violaciones a la Ley de Armas, a la Ley de Propiedad Vehicular y a la Ley de Sustancias Controladas. Hechas las correspondientes determinaciones de causa probable para arresto, el Tribunal de Primera Instancia, Sala Superior de Caguas, emitió una resolución en la que dividió a los imputados en cinco grupos, de acuerdo con las fechas en que alegadamente se cometieron los delitos, y señaló a cada grupo una fecha para la celebración de la vista preliminar.

Semanas después, el día de la celebración de la vista preliminar para los grupos I y II, el Ministerio Público se proponía presentar el testimonio de un agente encubierto, quien al parecer es el testigo principal de cargo en los casos de epígrafe. A tales efectos, el Ministerio Público solicitó, al amparo de la Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que se desalojara al público de la sala para que el tribunal determinara si era necesario celebrar la vista preliminar en privado para proteger la identidad y seguridad del agente encubierto, quien alegadamente temía por su seguridad porque continuaba desempeñándose como tal en otras investigaciones. Los abogados de defensa se opusieron a la solicitud, alegando

---

[1] Los imputados recurridos en el presente caso, son: Gabriel Pepín Cortés; Josian Navarro Fernández; Joel Baerga Ortiz; Reinaldo Díaz Hernández; Jaime Vega Medina; Félix García Toledo; Juan C. Sánchez Rodríguez; y Omar Pérez Fonfrías.

que a sus representados les asistía el derecho a la vista preliminar pública. Tras examinar los argumentos de las partes, el foro de instancia denegó la solicitud del Ministerio Público por entender que era tardía.

Sin embargo, luego de un receso, el Ministerio Público insistió en su solicitud. Reiteró su preocupación por la seguridad del agente y por la integridad de las investigaciones en curso en las que éste aún trabajaba. Además, adujo que no existe un término para solicitar que la vista preliminar sea privada y que fue ese mismo día que advino en conocimiento de que el agente aún tenía investigaciones pendientes y que temía por su seguridad. El Ministerio Público explicó que sólo ofrecería el testimonio del supervisor del agente encubierto para que el tribunal hiciera la determinación correspondiente, por lo que la vista de necesidad solicitada no dilataría los procedimientos. No obstante los fundamentos esbozados, el tribunal se reafirmó en su decisión y ordenó dar comienzo a la vista preliminar. En vista de ello, el Ministerio Público solicitó que el tribunal emitiera su decisión por escrito para así acudir ante el Tribunal de Apelaciones.

A pesar de lo anterior y aun cuando el Ministerio Público informó no estar preparado sin el testimonio del agente encubierto, el tribunal insistió en la celebración de la vista preliminar. Procedió entonces a llamar la prueba correspondiente, no sin antes imponerle una sanción

de $500 a cada fiscal por entender que no estaban preparados.

Ante esta situación, el agente encubierto entró a sala cubriendo su rostro con una capucha negra y escoltado por varios agentes. Acto seguido, el tribunal le inquirió si estaba dispuesto a testificar sin la máscara, a lo cual el agente respondió en la negativa, debido a que temía por su vida. En vista de lo anterior, el foro de instancia determinó que existía ausencia total de prueba y que, por tanto, no había causa probable para acusar a los imputados de los grupos I y II. Entendió, además, que la solicitud del Ministerio Público sólo pretendía dilatar los procedimientos, toda vez que varias semanas atrás se habían acordado, con la anuencia del Ministerio Público, las fechas para celebrar las vistas preliminares.

Por otro lado, días antes de la fecha señalada para la celebración de la vista preliminar correspondiente al grupo III, el Ministerio Público presentó una moción en la que, igual que en el caso de los grupos I y II, solicitó al foro de instancia que al inicio de la vista preliminar llevara a cabo una vista de necesidad para determinar si procedía la exclusión del público de la sala debido a la presentación del testimonio del mencionado agente encubierto. La defensa de los imputados se opuso a la solicitud del Ministerio Público, alegando que la naturaleza del procedimiento era pública, que los imputados tenían derecho a un juicio justo e imparcial y que el público tenía

derecho a observar los procedimientos. A su vez, sostuvieron que la solicitud del Ministerio Público era tardía y no les había sido notificada.

En esta ocasión, el tribunal accedió a la solicitud del Ministerio Público de celebrar una vista de necesidad para determinar si procedía excluir al público del procedimiento por causa del testimonio del agente encubierto. Para ello, el Ministerio Público presentó el testimonio del agente Félix Disdier González, quien al momento de su declaración trabajaba en la División de Drogas y Narcóticos de Caguas y aparentemente fungía como persona contacto con el testigo encubierto. El referido agente declaró que el testigo encubierto se encontraba en funciones y realizaba investigaciones y transacciones relacionadas con el trasiego ilegal de sustancias controladas en el área de Caguas. Declaró, además, que el testigo había recibido amenazas en casos anteriores.

Tras escuchar este testimonio, el Tribunal de Primera Instancia determinó que no se justificaba la celebración de la vista preliminar en ausencia del público y pospuso la misma. Dicho foro fundamentó su decisión en el derecho de acceso del público a la vista preliminar. Consideró, además, el hecho de que en las denuncias figuraba el nombre del agente encubierto, por lo que su identidad y descripción física —según infirió el tribunal— ya habían sido reveladas.

Inconforme con las determinaciones anteriores, el Procurador General acudió al Tribunal de Apelaciones en recursos separados. Sostuvo que, en el caso de los grupos I y II, el tribunal de instancia erró al sostener que las determinaciones de no causa probable para acusar estaban basadas en ausencia total de prueba y al determinar que la solicitud del Ministerio Público para celebrar la vista preliminar con exclusión del público era tardía. Por otro lado, en el caso del grupo III, el Procurador alegó que el foro de instancia erró al fundamentar su decisión en el derecho de acceso del público al juicio y no en el derecho del acusado a un juicio público. En ambos casos, el Procurador General arguyó que el tribunal erró al ignorar el lenguaje de la Regla 23(c) de Procedimiento Criminal, *supra*, que permite la exclusión del público en la vista preliminar en casos como el de autos.

El Tribunal de Apelaciones consolidó ambos recursos y, luego de los trámites de rigor, confirmó las determinaciones recurridas. En una escueta sentencia, el foro apelativo —sin distinguir las circunstancias particulares de cada recurso— concedió deferencia a los argumentos del Tribunal de Primera Instancia consistentes en que la solicitud del Ministerio Público fue tardía y en que la prueba no estableció los hechos necesarios para justificar la exclusión. El foro apelativo acogió, además, la inferencia del tribunal de instancia a los efectos de que tanto la identidad como la descripción física del

agente habían sido reveladas anteriormente porque su nombre aparecía en las denuncias.

Insatisfecho con la determinación del Tribunal de Apelaciones, el Procurador General acude ante nos mediante recurso de *certiorari* y arguye –en esencia– que basta con que el Ministerio Público indique que se propone presentar el testimonio de un agente encubierto para que el tribunal excluya al público de la sala de vista preliminar. Expone, además, que a los imputados no les asiste un derecho constitucional a la vista preliminar pública y que éstos tienen la carga de demostrar que la celebración de la vista o parte de ésta en privado comprometería su derecho a un juicio justo e imparcial. Finalmente, aduce que no hay base para sostener que el Estado reveló la identidad del agente encubierto.

Por su parte, el recurrido Félix García Toledo, quien es parte del grupo III y único imputado que ha comparecido ante nosotros, alega que el Ministerio Público pretende convertir las disposiciones de la Regla 23(c) en una "patente de corso" para permitir la celebración de la vista preliminar en privado cada vez que el Estado se proponga presentar el testimonio de un agente encubierto. Lo anterior, según García Toledo, no considera que existe un derecho de acceso a la vista preliminar a favor del público y la prensa, ni su derecho a que la vista preliminar sea pública. Sostiene, además, que como la norma general es la apertura de la vista preliminar, la parte que interese

limitar el acceso a ésta –en este caso el Ministerio Público– deberá demostrar las razones que así lo justifiquen. Según García Toledo, el Ministerio Público no cumplió con lo anterior durante la vista de necesidad celebrada en el caso del grupo III.

Examinada la petición de *certiorari* presentada por el Procurador General, acordamos expedir. Con el beneficio de los argumentos de las partes, procedemos a resolver.

## II

Como es sabido, nuestro ordenamiento reconoce como un derecho fundamental el derecho de todo acusado a que el juicio que se celebre en su contra sea público. Este derecho proviene expresamente de la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico y de la Sexta Enmienda de la Constitución de Estados Unidos. Art. II, Sección 11, Const. E.L.A., L.P.R.A., Tomo 1, 1999, pág. 327; Enmda. Sexta, Const. E.E.U.U., L.P.R.A., Tomo 1, 1999, pág. 188.

Sin embargo, el acusado no es el único acreedor del derecho fundamental a juicio público, pues la ciudadanía y la prensa también pueden invocarlo para lograr acceso a dicho procedimiento. A diferencia del derecho a juicio público que cobija al acusado, el derecho del público y de la prensa es más bien un derecho constitucional implícito que encuentra su fundamento en los derechos a la libre expresión, asociación y libertad de prensa, garantizados por la Sección 4 del Artículo II de nuestra Constitución y

por la Primera Enmienda de la Constitución de los Estados Unidos, así como en el derecho de acceso a la información en manos del Estado, el cual hemos reconocido en nuestra jurisdicción como corolario del derecho a la libre expresión.  Const. E.L.A., *supra*, Sec. 4; Enmda. Primera, Const. E.E.U.U., *supra*; López Vives v. Policía de P.R., 118 D.P.R. 219, 228 (1987); Soto v. Srio de Justicia, 112 D.P.R. 477, 488 (1982); véanse, a modo ilustrativo, Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980). Véase  E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, 1ra Ed., Colombia, Editorial Forum, 1992, Vol. II, Secs. 13.1-13.2, págs. 185-205.

El carácter fundamental del derecho de acceso a los juicios penales a favor del público y de la prensa ha dado lugar a que se extienda dicho derecho a etapas anteriores al juicio.  Específicamente, se ha reconocido que el derecho de acceso alcanza procedimientos como la vista preliminar.  Press-Enterprise Co. v. Superior Court (Press-Enterprise II), 478 U.S. 1 (1986).[2]  Cónsono con lo anterior y a la luz del caso Press-Enterprise II, en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993), el Tribunal Supremo de Estados Unidos declaró inconstitucional nuestra anterior Regla 23(c) de Procedimiento Criminal,

---

[2] Sobre el alcance del derecho de acceso a otros procedimientos anteriores al juicio, véanse, a modo ilustrativo, Waller v. Georgia, 467 U.S. 39 (1984) (vistas de supresión de evidencia) y Press-Enterprise Co. v. Superior Court of California (Press-Enterprise I), 464 U.S. 501 (1984) (*voir dire* o selección del jurado).

*supra*, la cual disponía que la vista preliminar sería privada, a menos que al ésta comenzar el imputado solicitara lo contrario. De esta manera, se dejó sin efecto el dictamen emitido en El Vocero de P.R. v. E.L.A., 131 D.P.R. 356 (1992). Véase, a modo ilustrativo, Rivera-Puig v. García-Rosario, 983 F.2d 311 (1st Cir., 1992).

A la luz de lo resuelto por el Tribunal Supremo de Estados Unidos, la Asamblea Legislativa enmendó la Regla 23(c) de Procedimiento Criminal, *supra*, mediante la Ley Núm. 197 de 12 de agosto de 1995 para disponer que, como regla general, la vista preliminar será pública. De esta forma, la actual Regla 23(c), *supra*, lee –en lo pertinente– como sigue:

> La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pública acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razonables que una vista privada para disipar tal probabilidad. En tales casos, la decisión del magistrado deberá fundamentarse en forma precisa y detallada.
>
> También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efectos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.
>
> Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente encubierto o un

confidente que aún se encuentre en funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos. (énfasis nuestro). 34 L.P.R.A. Ap. II.

Claramente, del texto transcrito se colige que como regla general la vista preliminar es de carácter público. No obstante, el mencionado precepto contempla expresamente cuatro excepciones a dicha norma, a saber: (1) para proteger el derecho constitucional del imputado a un juicio justo e imparcial; (2) cuando la vista privada sea necesaria para proteger cualquier otro interés de naturaleza apremiante; (3) cuando el Ministerio Público interese presentar el testimonio de un agente encubierto o un confidente que aún se encuentre en funciones; y (4) cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos. En los primeros dos casos, la Regla exige una determinación previa por parte del tribunal sobre la necesidad de la limitación al acceso del público y sobre la disponibilidad de otras alternativas menos abarcadoras que la vista privada. Tal determinación, según lo exige el propio estatuto, debe fundamentarse de forma precisa y detallada.

Ahora bien, el sentido literal de los incisos (3) y (4) parece sugerir que no se requiere una determinación previa sobre la necesidad de la limitación del acceso del público ni sobre la disponibilidad de otras alternativas menos abarcadoras. Amparándose en ello, el Procurador General alega, en esencia, que la Regla 23(c), *supra*,

establece un derecho automático a favor del Estado, que lo faculta a excluir al público de la sala de vista preliminar cada vez que se proponga presentar el testimonio de un agente encubierto. Aduce que basta con que el Ministerio Público exprese que dicho agente testificará para que el tribunal deba excluir al público de la sala. No estamos de acuerdo.

De un examen de la Exposición de Motivos de la Ley Núm. 197, *supra*, notamos que la Asamblea Legislativa expresó cuál era el objetivo de sus enmiendas a la Regla 23(c) de Procedimiento Criminal, *supra*:

> **Resulta imprescindible atemperar las disposiciones de la Regla 23 con la reciente determinación del Tribunal Supremo Federal** para evitar la situación de que diferentes jueces puedan darle diferente interpretación a dicha decisión. Las enmiendas incorporadas al estatuto tienen el propósito de aclarar el alcance de la determinación jurisprudencial, brindando así uniformidad en el procedimiento criminal. (énfasis nuestro). 1995 (Parte 1) Leyes de Puerto Rico, pág. 977.

En iguales términos se consignó la intención legislativa en el último párrafo de la referida Exposición de Motivos:

> **Las enmiendas incorporadas a la Regla 23 tienen el propósito de atemperar dicha disposición legal con la reciente determinación del Tribunal Supremo Federal al establecerse que las vistas preliminares serán de naturaleza pública y disponerse las circunstancias excepcionales cuando podrán ser privadas.** (énfasis nuestro). *Id.*, pág. 978.

Precisamente, como se discutirá más adelante, la decisión a la que alude la citada Exposición de Motivos,

así como otras determinaciones anteriores del Tribunal Supremo Federal, establecen el requisito de una determinación judicial previa a la exclusión del público de la sala de vista preliminar, consistente en evaluar si existe un interés apremiante que sólo puede ser protegido con la vista en privado.

No obstante lo anterior, debemos reconocer que cierto aspecto de la citada Exposición de Motivos refleja que la Asamblea Legislativa consideró que la seguridad de los agentes encubiertos que se encuentren en funciones al momento de testificar en la vista preliminar constituye un interés apremiante que justifica -sin ulterior consideración- el cierre de la vista preliminar. En este sentido, se expresó que:

> Es necesario también proteger la integridad física y emocional de los agentes encubiertos y confidentes quienes al momento de prestar testimonio en vista preliminar todavía se desempeñan en esas funciones. **A estos efectos expresamente se exceptúan de la naturaleza pública de la vista los casos de agentes encubiertos y confidentes quienes al momento de declarar en la vista preliminar se estén desempeñando en esas funciones**. (énfasis nuestro). *Id.*

No cuestionamos que lo anterior pueda ser un interés apremiante del Estado. La limitación del acceso a la vista preliminar podría ser necesaria para proteger la vida misma de estos ciudadanos, a quienes hemos reconocido como un arma de investigación necesaria para esclarecer la comisión de ciertos delitos que se distinguen por su característica esencial de clandestinidad. Si no se contara con este método de investigación, muchos de estos delitos

permanecerían impunes. Pueblo v. Carballosa y Balzac, 130 D.P.R. 842, 851 (1992); Pueblo v. Seda, 82 D.P.R. 719, 730 (1961). Véase, Valle v. E.L.A., 157 D.P.R. 1, 21 (2002).

Ahora bien, no podemos desvincular las enmiendas realizadas a la Regla 23(c) de Procedimiento Criminal, *supra*, del problema que el legislador pretendió remediar: la inconstitucionalidad de una regla de exclusión automática del público de la sala de vista preliminar. Por tanto, aunque reconocemos la distinción hecha por el legislador en cuanto a los agentes encubiertos que aún se encuentran en funciones, debemos tener presente el propósito que en principio guió a la Asamblea Legislativa al aprobar dicha ley para así imprimirle efectividad a su espíritu. Véanse, Otero de Ramos v. Srio. de Hacienda, 156 D.P.R. 876, 883 (2002); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 538 (1999); 31 L.P.R.A. sec. 19. En este sentido, aunque como regla general los términos obligatorios como "deberá" se interpretan de forma tal que ordenan algo y los términos potestativos como "podrá" de forma tal que concedan discreción, hemos dispuesto que los primeros pueden leerse como los segundos, haciendo directivo lo que es aparentemente mandatorio, para conformar el lenguaje del estatuto con el propósito legislativo. Consejo v. Gobierno Barceloneta, res. 20 de junio de 2006, 2006 TSPR 102; Srio. de Justicia v. Tribunal Superior, 95 D.P.R. 158 (1967).

Por otro lado, refrendar la tesis del Ministerio Público y decretar automáticamente la celebración de la vista preliminar en privado cuando en ella se fuese a presentar el testimonio de un agente encubierto que aún se encuentre en funciones pondría la Regla 23(c) al margen de los preceptos constitucionales aplicables. De esta forma, nuestra tarea en el caso de autos consiste en armonizar la Regla en controversia con la normativa constitucional pertinente. Véanse, Nogueras v. Hernández Colón, 127 D.P.R. 405 (1990); Milán Rodríguez v. Muñoz, 110 D.P.R. 610 (1981). Veamos.

### III

El derecho a juicio público a favor de la ciudadanía y la prensa no es absoluto, pues puede encontrar su límite en intereses gubernamentales apremiantes que justifiquen la celebración de la vista o parte de ésta en privado.[3] No obstante lo anterior, por tratarse de un derecho fundamental, la consideración de un posible cierre de la vista preliminar debe ser evaluada restrictivamente a favor del acceso, bajo un escrutinio estricto. Para que la

---

[3] Tal es el caso de la Regla 131 de Procedimiento Criminal, que dispone que en casos de delitos sexuales, el tribunal podrá excluir al público del juicio durante el testimonio de la víctima, previa celebración de una vista en privado para dilucidar la necesidad de proveerle a la víctima dicha protección. 34 L.P.R.A. Ap. II, R. 131. Similarmente, la Regla 21 de Evidencia que regula el procedimiento para la admisibilidad de prueba sobre la conducta o historial sexual de la víctima del delito de violación o su tentativa, contempla la celebración de una vista privada en la cual se permitirá el interrogatorio a la perjudicada sobre la evidencia propuesta por el acusado. 32 L.P.R.A. Ap. IV, R. 21. Véase, además, la Regla 154.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 154.1.

mencionada limitación sea posible, se requiere demostrar que ésta es necesaria para salvaguardar un interés gubernamental apremiante y que la exclusión ha sido estrechamente diseñada ("narrowly tailored") para servir dicho interés. Véase, a modo ilustrativo, Globe Newspaper Co. v. Superior Court, *supra*. En este sentido, existe una presunción de apertura de los juicios penales, la cual – según hemos visto– se extiende a la etapa de vista preliminar. De ahí que, quien pretenda derrotar dicha presunción, deberá satisfacer el siguiente escrutinio establecido por el Tribunal Supremo Federal y que hoy adoptamos:

> La presunción de apertura puede superarse sólo por un interés apremiante basado en una determinación de que el cierre es esencial para preservar valores superiores y que está estrechamente diseñado para servir dicho interés. El interés debe ser articulado por el tribunal, junto con determinaciones suficientemente específicas, de manera que un tribunal apelativo pueda juzgar si la orden de cierre fue adecuada. (Traducción nuestra). Press-Enterprise I, *supra*, pág. 510.[4]

---

[4] Similares requisitos adoptamos en Fulana de Tal v. Demandado A, 138 D.P.R. 610 (1995), para justificar una limitación del derecho de acceso del público y la prensa a los procedimientos civiles.

Cabe señalar que los requisitos esbozados en Press-Enterprise I fueron reafirmados en Press-Enterprise II, donde se enfatizó la necesidad de que el tribunal realice determinaciones específicas ("specific, on the record findings") para justificar la limitación al derecho de acceso. Press-Enterprise II, *supra*, pág. 13. A tales efectos, en dicho caso se resolvió que si el interés apremiante que se invoca para justificar una solicitud de cierre de la vista preliminar es el derecho del acusado a un juicio justo, es necesario que el tribunal realice determinaciones específicas que demuestren que: (1) existe una probabilidad sustancial de que el derecho del acusado a

Asimismo, dicho criterio ha sido extendido por el Tribunal Supremo Federal a aquellos casos en que -ausente un reclamo del derecho de acceso por parte del público o la prensa- es el acusado quien se opone al cierre del procedimiento, al amparo de su derecho explícito a juicio público. Así lo resolvió dicho foro en Waller v. Georgia, *supra*, en el contexto de un procedimiento anterior al juicio, tras concluir que el derecho a juicio público de la Sexta Enmienda se extiende a las vistas de supresión de evidencia.[5] Para llegar a dicha conclusión, el Tribunal Supremo de Estados Unidos consideró sus decisiones previas sobre la apertura de los procedimientos penales a la luz del derecho de acceso de la Primera Enmienda y sostuvo lo siguiente:

> [E]l análisis en estos casos se ha basado en gran medida en la Primera Enmienda. Sin embargo, no cabe duda que el derecho explícito del acusado bajo la Sexta Enmienda no es menos protector del juicio público que el derecho implícito de acceso del público y la prensa bajo la Primera Enmienda. El propósito principal de un procedimiento penal debe ser

un juicio justo se perjudique por la publicidad que el cierre prevendría; y (2) que las alternativas razonables al cierre no pueden proteger adecuadamente el derecho del acusado a un juicio justo. *Id.*, pág. 14.

[5] En Waller, a pesar de la oportuna objeción de los acusados, el tribunal de instancia accedió al cierre de la vista de supresión de evidencia solicitado por el fiscal, quien adujo que bajo un estatuto del estado de Georgia la publicación de la prueba en controversia la haría inadmisible en procedimientos posteriores. Tras la confirmación de esta determinación por parte del Tribunal Supremo de Georgia, el Tribunal Supremo Federal revocó, resolviendo, según señalamos, que el derecho a juicio público de la Sexta Enmienda alcanza las vistas de supresión de evidencia. Waller v. Georgia, *supra*, pág. 43.

juzgar al acusado justamente y nuestra
jurisprudencia ha sido uniforme al reconocer
que la garantía de juicio público es una
creada para el beneficio del acusado.
(Traducción y énfasis nuestro, citas
omitidas). Waller v. Georgia, *supra*, pág. 46.

De esta manera, en vista del propósito que persigue la
garantía del derecho a juicio público, en aquellos
procedimientos de nuestro ordenamiento procesal penal en
los que se ha reconocido la existencia de un derecho de
acceso a favor de la ciudadanía y de la prensa –como es el
caso de la vista preliminar– también habrá cabida para que
el acusado invoque su propio derecho a juicio público bajo
la Sección 11 del Artículo II de la Constitución del Estado
Libre Asociado de Puerto Rico y la Sexta Enmienda de la
Constitución de Estados Unidos. Claro está, en ese
análisis cobra particular importancia la semejanza del
procedimiento en cuestión con el juicio. A tales efectos,
citando a Waller v. Georgia, *supra*, el Profesor Chiesa
señala que el derecho explícito a juicio público:

se extiende no sólo al acto del juicio
propiamente dicho sino también a otros
procedimientos criminales que participan de
una naturaleza similar al juicio. Queda
incluido el derecho a vista pública de
supresión de evidencia, así como, al menos,
vista pública en todo procedimiento al cual
haya un derecho de acceso por parte del
público en general. (Énfasis nuestro,
citas omitidas). Chiesa Aponte, *supra*, pág.
202.

Del mismo modo, el Profesor La Fave, también a la luz
de Waller v. Georgia, *supra*, comenta: "También se ha
resuelto que [la garantía de la Sexta Enmienda] se extiende
a ciertos procedimientos anteriores al juicio, como las

vistas de supresión de evidencia, que se asemejan al juicio." W.R. La Fave y otros, Criminal Procedure, 3ra edición, Thomson/West, 2007, Vol. 6, Sec. 24.1, pág. 301-302. (Énfasis nuestro).

En Waller, al evaluar la controversia ante su consideración, el Tribunal Supremo de Estados Unidos examinó la naturaleza del procedimiento cuya apertura se reclamaba. El Tribunal le confirió importancia al hecho de que frecuentemente las vistas de supresión de evidencia se parecen a un juicio, pues los testigos declaran bajo juramento, los abogados exponen sus argumentos y el resultado frecuentemente depende de una evaluación de cuestiones de hecho. Waller v. Georgia, supra, pág. 47. Incluso, se reconoció que en ocasiones la vista de supresión podría ser el único juicio que se celebre, pues luego de ésta el acusado podría hacer una alegación preacordada con Fiscalía y declararse culpable. Id.

Precisamente, este criterio de similitud al juicio fue el que posteriormente llevó al Tribunal Supremo de Estados Unidos a concluir en Press-Enterprise II, supra, que existe un derecho de acceso del público a las vistas preliminares que son suficientemente parecidas al juicio ("sufficiently like a trial"). Press-Enterprise II, supra, pág. 12. Este pronunciamiento, según indicamos anteriormente, se hizo extensivo a las vistas preliminares de nuestra jurisdicción en El Vocero de Puerto Rico v. Puerto Rico, supra. Allí, el Tribunal Supremo Federal consideró que la vista

preliminar en Puerto Rico es lo suficientemente parecida a un juicio como para que se deba permitir el acceso del público y de la prensa a ésta. El Vocero de Puerto Rico v. Puerto Rico, *supra*, págs. 149-150.[6]

Cónsono con lo anterior, concluimos que el imputado puede invocar su derecho a juicio público bajo la Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico o bajo la Sexta Enmienda de la Constitución de Estados Unidos, para oponerse a un intento de cierre de la vista preliminar por parte del Ministerio Público. Por ende, ante el reclamo del imputado de su derecho a juicio público, toda solicitud de cierre de la vista preliminar deberá evaluarse restrictivamente a favor de su apertura, bajo un escrutinio estricto. De esta manera, adoptamos los siguientes requisitos esbozados por el Tribunal Supremo Federal en Waller v. Georgia, *supra*: (1) la parte que

---

[6] Para llegar a tal conclusión, el Tribunal Supremo Federal consideró varios factores, entre ellos: que la vista preliminar se celebra ante un magistrado neutral; el imputado tiene derecho a asistencia de abogado, a contrainterrogar los testigos en su contra y a ofrecer prueba a su favor; y no está presente un jurado. Se señaló además que en una cantidad sustancial de los casos criminales, la vista preliminar provee la única oportunidad para que el público observe el sistema judicial penal. El Vocero de Puerto Rico v. Puerto Rico, *supra*, pág. 150.

Debemos recalcar que, toda vez que el único propósito al destacar estas características propias de la vista preliminar fue el reconocer la existencia del derecho de acceso del público y la prensa a dicho procedimiento, ello de ninguna forma implica que este Tribunal se distancie de la norma firmemente establecida a los efectos de que la vista preliminar no es un "mini juicio" ni un juicio preliminar. Pueblo v. Soler, res. 28 de octubre de 2004, 2004 TSPR 165; Pueblo v. Ortiz, Rodríguez, 149 D.P.R. 363 (1999).

interese el cierre de la vista deberá exponer un interés apremiante; (2) el cierre no será más amplio que lo necesario para proteger dicho interés; (3) el tribunal deberá considerar alternativas razonables al cierre; y (4) el tribunal deberá realizar determinaciones adecuadas para sostener el cierre. Waller v. Georgia, *supra*, pág. 48.

Ciertamente, de conformidad con los requisitos que aquí adoptamos, no cabe duda de que la posibilidad de un decreto automático que ordene el cierre de vista preliminar al amparo de la Regla 23(c) de Procedimiento Criminal, *supra*, no encuentra apoyo en nuestro ordenamiento constitucional. Es profusa la jurisprudencia norteamericana que valida la limitación del acceso del público durante el juicio cuando el Ministerio Público se propone presentar el testimonio de un agente encubierto, para preservar la seguridad o identidad de dicho agente. Véase, a modo ilustrativo, Anotación, Exclusion of Public From State Criminal Trial to Preserve Safety or Confidentiality of Undercover Police Officer Witness, 100 A.L.R.5th 171 (2002). No obstante, existe un consenso en la misma sobre el hecho de que, a la luz de Waller v. Georgia, la limitación del acceso del público no puede ser automática. *Id.*

Así pues, resulta forzoso concluir que en aquellos casos en que el imputado invoque su derecho a juicio público para oponerse a una solicitud del Estado hecha al amparo de la Regla 23(c) de Procedimiento Criminal para

presentar en privado el testimonio de un agente encubierto que aún se encuentra en funciones, se requerirá una consideración previa del tribunal para dilucidar la necesidad de tal solicitud. Dicha consideración consistirá en una vista de necesidad en la cual el Ministerio Público deberá demostrar que el agente encubierto aún se encuentra en funciones y que la limitación al acceso del público a la vista preliminar es la alternativa menos abarcadora para proteger su seguridad. De tratarse de un agente encubierto que no se encuentra en funciones, el Ministerio Público deberá demostrar que existe un interés apremiante que justificaría su solicitud, como lo podría ser preservar la seguridad física o emocional del agente, y que la limitación del acceso del público no será más amplia de lo necesario para proteger dicho interés.

En la vista de necesidad que celebre el tribunal de instancia podrán tomarse en cuenta factores como los siguientes: si el agente encubierto continúa trabajando en investigaciones de esa naturaleza; si continúa trabajando en casos o investigaciones relacionadas al caso objeto de la vista de necesidad; si su identidad ha sido revelada; las medidas o precauciones que ha tomado el Estado para preservar la identidad y seguridad del agente; si el agente ha recibido amenazas; y si el agente teme por su vida o su seguridad física o emocional o la de su familia. Para demostrar lo anterior, el testimonio del agente en cuestión durante la vista de necesidad no será necesario, aunque

nada impide que dicho agente comparezca a declarar en la referida vista. Véase, a modo ilustrativo, Anotación, Exclusion of Public From State Criminal Trial to Preserve Safety or Confidentiality of Undercover Police Officer Witness, *supra* y casos allí citados.

Resolvemos, además, que la solicitud del Ministerio Público deberá estar fundamentada y, salvo justa causa, deberá formularse y notificársele al imputado dentro de un término de tiempo razonable antes de la celebración de la vista preliminar, de modo tal que la solicitud no dilate los procedimientos ante el tribunal.

Considerada la solicitud del Ministerio Público, el tribunal deberá fundamentar su decisión con determinaciones precisas y detalladas. De decretar que procede la limitación al acceso del público, el tribunal deberá exponer las razones que justifiquen que el cierre no será más amplio de lo necesario para proteger el interés del Ministerio Público, como lo sería el cierre parcial de la vista, sólo durante el testimonio del agente en cuestión.[7]

Aclarado lo anterior, pasamos a disponer concretamente del caso ante nuestra consideración.

**IV**

En el caso de autos, el Ministerio Público se proponía presentar el testimonio de un agente encubierto en dos

---

[7] La norma que aquí adoptamos es igualmente aplicable a aquellos casos en que el Ministerio Público interese presentar el testimonio de un confidente que aún se encuentre en funciones o el testimonio de la víctima de un caso de violación o actos impúdicos o lascivos, según lo contempla la Regla 23(c) de Procedimiento Criminal, *supra*.

vistas preliminares. A tales efectos, solicitó al Tribunal de Primera Instancia que celebrara una vista de necesidad en ambos casos para que dicho foro determinara si procedía su solicitud. En el caso de los grupos I y II, según explicamos, el tribunal de instancia se negó a conceder la solicitud del Ministerio Público, por entender que era tardía. En consecuencia, al amparo del fundamento de ausencia total de prueba, resolvió que no existía causa probable para acusar a los imputados de dichos grupos.[8]

Somos del criterio que, al así actuar, el Tribunal de Primera Instancia excedió los límites de su discreción. Por un lado, la causa de la alegada ausencia total de prueba fue provocada por el propio tribunal, que insistió en que el Ministerio Público presentara sus testigos, a pesar de que éste solicitó presentar la prueba en privado. A su vez, dicho foro concluyó que la solicitud en cuestión era tardía, aun cuando el Ministerio Público mostró justa causa para haberla presentado el mismo día de la vista, a saber: que en ese momento advino en conocimiento del hecho de que el agente encubierto aún tenía investigaciones pendientes y que temía por su seguridad. Ante tales circunstancias el foro de instancia debió, al menos, evaluar la petición del Ministerio Público para determinar

---

[8] Incluso, como mencionamos anteriormente, el tribunal de instancia impuso una sanción de $500 a cada fiscal. Aunque entendemos que dicha sanción es improcedente, el Procurador General no la cuestiona en su petición de *certiorari*, por lo que no intervendremos con ésta.

su procedencia, mediante la celebración de la vista de necesidad solicitada.

Por otro lado, en el caso del grupo III el tribunal de instancia sí celebró una vista de necesidad para dilucidar la solicitud del Ministerio Público, pero determinó que ésta era improcedente, a la luz del testimonio ofrecido por el agente Disdier González, y por considerar que, de todas maneras, la identidad y descripción física del agente encubierto en controversia habían sido reveladas porque su nombre aparecía en las denuncias.

Aunque reconocemos que el tribunal de instancia actuó correctamente al celebrar la mencionada vista, dicho foro no fundamentó, de forma precisa y detallada, las razones para denegar la solicitud del Ministerio Público, lo que nos impide pasar juicio sobre la corrección de su determinación. Por tanto, procede que el tribunal dilucide nuevamente la solicitud del Ministerio Público, lo que deberá hacer mediante la celebración de una nueva vista de necesidad.

Por otro lado, respecto a la inferencia hecha por el tribunal de instancia sobre el hecho de que tanto la identidad como la descripción física del agente encubierto en cuestión fueron reveladas, somos del criterio que en las circunstancias de este caso no procedía la misma. Un examen de los autos originales del caso de epígrafe revela que a través del procedimiento judicial se han consignado varios nombres con apellidos distintos para el mismo agente

encubierto. Mientras que en las denuncias consta un nombre, en las Resoluciones de no causa en vista preliminar emitidas por el Tribunal de Primera Instancia en los casos de los grupos I y II consta otro. Lo mismo ocurre con una Resolución posterior que emitió el tribunal de instancia en la que reafirmó su determinación de no causa en dichos casos. Aunque le corresponde al foro de instancia evaluar este asunto en la vista de necesidad, en el caso de autos no procedía su inferencia sólo a base de la información incluida en la denuncia.

Asimismo, somos del criterio que la presencia de dos nombres con apellidos distintos para un mismo agente encubierto es indicativo del esfuerzo realizado por el Ministerio Público para proteger la identidad de su testigo. En este sentido, debe tomarse en cuenta que no es práctica ajena a los agentes encubiertos el asumir distintos nombres para preservar adecuadamente su identidad y proteger la efectividad de sus investigaciones. Por ello, ni el Tribunal de Primera Instancia ni el Tribunal de Apelaciones tenían motivos suficientes para inferir –del hecho de que se consignó un nombre en las denuncias– que la identidad del agente encubierto en controversia fue revelada y, mucho menos, su descripción física.

**V**

Por los fundamentos que anteceden, revocamos el dictamen del Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia para que celebre las

vistas de necesidad correspondientes, de forma consistente con los pronunciamientos esbozados en esta Opinión.

Se dictará Sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                      CC-2007-371        Certiorari

Gabriel A. Pepín Cortés
y Otros

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 29 de mayo de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que celebre las vistas de necesidad correspondientes, de forma consistente con los pronunciamientos esbozados en la Opinión.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina